### MIDDLETON v. CITY OF NEW YORK.

(Supreme Court, Appellate Term. June 1, 1906.)

MUNICIPAL CORPORATIONS—CIVIL SERVICE—OFFICERS — SALARY — DETERMINATION.

    Where plaintiff resigned from his position as architectural draftsman, a position within the classified service of the city of New York, for which a salary of $1,500 was provided, and was immediately appointed chief draftsman, a nonclassified position, for which no salary had been so fixed, as required by Greater New York Charter, Laws 1901, pp. 7, 32, c. 466, §§ 10, 56, as amended by Laws 1902, pp. 1068, 1067, cc. 436, 435, and section 1543, Laws 1901, p. 636, c. 466, plaintiff was not entitled to recover the difference between the amount paid to him and the higher salary fixed by the fire commissioner on appointing plaintiff chief draftsman.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Edward L. Middleton against the city of New York. From a Municipal Court judgment in favor of plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before GILDERSLEEVE, DAVIS, and CLINCH, JJ.

John J. Delany (Theodore Connoly and Thomas F. Noonan, of counsel), for appellant.

Weed, Henry & Meyers (Richmond Weed, of counsel), for respondent.

GILDERSLEEVE, J. The plaintiff alleges in his complaint that on the 4th day of December, 1902, he was duly appointed an assistant superintendent of buildings in the fire department of the city of New York at a salary of $1,950 per annum, and entered upon the discharge of the duties of the said petition and performed the same; that for the period from December 4, 1902, to May, 1, 1903, he received from the

defendant a salary at the rate of $1,500 per annum, instead of $1,950 per annum, and he demands judgment for the difference between said amounts for the period aforesaid. The learned court below found in favor of the plaintiff for the amount claimed, and defendant appeals.

The evidence is largely documentary. From a careful reading of all the testimony, the following facts appear to be established, viz.: On September 24, 1902, the plaintiff was appointed an architectural draftsman, to take effect October 1, 1902, with an annual salary duly fixed by law at $1,500. The plaintiff continued in that position until December 8, 1902, when he resigned. On December 4, 1902, a special order was issued by the fire commissioner, appointing plaintiff chief draftsman at a salary of $1,950 per annum, to take effect on December 8, 1902. It will be noted that plaintiff's resignation as architectural draftsman and his appointment as chief draftsman took place on the same day. The position of architectural draftsman, which, as we have seen, plaintiff assumed October 1, 1902, was a classified one, the salary of which was fixed by the board of aldermen and the board of estimate and apportionment, as provided by law. The position of chief draftsman was not classified, nor was the salary fixed by the board of aldermen and the board of estimate and apportionment. The plaintiff continued ostensibly in the position of chief draftsman until May 1, 1903, when by a special order issued by the fire commissioner, bearing date April 25, 1903, he was appointed assistant superintendent of buildings, at a salary of $1,950 per annum. When the pay roll for December, 1902, was made out, it had on it plaintiff's name as chief draftsman, at a salary of $1,950 per annum, and was so certified by the municipal civil service commissioners. On receipt of the pay roll by the comptroller, the latter refused to recognize the position of chief draftsman and pay salary therefor, and he altered the pay roll by striking out the name of plaintiff, his position and salary, and substituted therefor the name of plaintiff as architectural draftsman, at a salary of $1,500 per annum. This latter position, it will be remembered, was the position from which the plaintiff resigned on December 8, 1902, to accept, it may be assumed, the position of chief draftsman. It is not shown that the comptroller possessed authority for such action. From December 8, 1902, however, down to May 1, 1903, when plaintiff was lawfully appointed assistant superintendent of buildings, he received from defendant compensation at the rate of $1,500 per annum. It is the claim of the defendant that the comptroller had no power to invest the plaintiff anew with the position of architectural draftsman, and that he was without office from the time of his resignation on December 8, 1902, until May 1, 1903. The record now before us seems to furnish ample support for this claim. It is not our purpose, however, to determine that question on this appeal. There are other grounds which, in our opinion, demand a reversal of the judgment, and we leave that question open for determination upon the evidence that may be adduced at a new trial.

It clearly appears that the board of estimate and apportionment never created the office of chief draftsman, nor fixed a salary to such position. Upon this state of facts, it was the duty of the court below to dismiss the complaint. Section 10 of the Greater New York Charter

(Laws 1901, p. 7, c. 466, amended by Laws 1902, p. 1068, c. 436), section 56 of the Greater New York Charter (Laws 1901, p. 32, c. 466, amended by Laws 1902, p. 1067, c. 435), and section 1543 of the Greatei New York Charter (Laws 1901, p. 636, c. 466), make it incumbent upon the plaintiff to prove that his salary was fixed by the board of aldermen and the board of estimate and apportionment. Failing this, he was not entitled to recover.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.